UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES -- GENERAL

Case No.    **CV 17-3150-JFW (SKx)**                                    Date:  July 12, 2017

Title:        Marie Hernandez -v- Starbucks Corporation, et al.

**PRESENT:**
            **HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE**

    Shannon Reilly                              None Present
    Courtroom Deputy                            Court Reporter


**ATTORNEYS PRESENT FOR PLAINTIFFS:**         **ATTORNEYS PRESENT FOR DEFENDANTS:**
              None                                               None

**PROCEEDINGS (IN CHAMBERS):**    ORDER GRANTING PLAINTIFF MARIE HERNANDEZ'S RENEWED MOTION TO REMAND PURSUANT TO 28 U.S.C. § 1447 [filed 6/19/2017; Docket No. 34]

    On June 19, 2017, Plaintiff Marie Hernandez ("Plaintiff") filed a Renewed Motion to Remand Pursuant to 28 U.S.C. § 1447 ("Renewed Motion to Remand").  On June 26, 2017, Defendants Starbucks Corporation and Teavana Corporation (collectively, "Defendants") filed their Opposition.  On July 3, 2017, Plaintiff filed a Reply.  Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds that this matter is appropriate for decision without oral argument.  The hearing calendared for July 17, 2017 is hereby vacated and the matter taken off calendar. After considering the moving, opposing, and reply papers, and the arguments therein, the Court rules as follows:

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

    On March 20, 2017, Plaintiff filed a Complaint in Ventura County Superior Court, alleging claims against Defendants for violation of the California Labor Code, including failure to provide meal breaks and rest breaks, failure to provide minimum wages and overtime wages, failure to timely pay final wages, and failure to provide accurate wage statements.  She also alleges a claim for violation of California Business & Professions Code § 17200, et seq.  She alleges these claims on behalf of a putative class that includes all of Defendants' "non-exempt manager employees who worked in California during the period from March 20, 2013, to the present."        Complaint at ¶ 15.

    On April 26, 2017, Defendants filed a Notice of Removal of Action Pursuant to 28 U.S.C. §§ 1332(d)(2), 1441, 1446, and 1453 ("Notice of Removal"), alleging that this Court has jurisdiction pursuant to 28 U.S.C. § 1332(d), the Class Action Fairness Act of 2005 ("CAFA").

In her Renewed Motion to Remand,[1] Plaintiff argues that Defendants have failed to meet their burden of proof that the amount in controversy exceeds $5,000,000, and moves to remand this action to Ventura County Superior Court. Since filing the Renewed Motion to Remand, Plaintiff has filed a First Amended Complaint, which adds a claim for failure to reimburse business expenses under California Labor Code § 2802.

## II.   LEGAL STANDARD

"CAFA provides expanded original diversity jurisdiction for class actions meeting the amount in controversy and minimal diversity and numerosity requirements set forth in 28 U.S.C. § 1332(d)(2)." *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL–CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087, 1090–91 (9th Cir. 2010); *see Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1195 (9th Cir. 2015) ("A CAFA-covered class action may be removed to federal court, subject to more liberalized jurisdictional requirements"). CAFA vests district courts with "original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs," and is a class action consisting of more than 100 members "in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d); *see also Standard Fire Ins. Co. v. Knowles*, 568 U.S. 558, 133 S.Ct. 1345, 1348 (2013).

"[N]o antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court." *Dart Cherokee Basin Operating System Co., LLC v. Owens*, 135 S.Ct. 547, 554 (2014). "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold. Evidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation." *Id.* When, as here, "a defendant's assertion of the amount in controversy is challenged ... both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id.*; *see also Ibarra*, 775 F.3d at 1195.

When the amount in controversy is challenged, "the defendant seeking removal bears the burden to show by a preponderance of the evidence that the aggregate amount in controversy exceeds $5 million . . . ." *Ibarra*, 775 F.3d at 1197. "The parties may submit evidence outside the complaint, including affidavits or declarations, or other summary-judgment-type evidence relevant to the amount in controversy at the time of removal." *Id.* (quotations and citations omitted). "Under this system, a defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." *Id.* "CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure." *Id.* at 1198.

## III.   DISCUSSION

Defendants, based on certain assumptions, calculate the amount in controversy to be at

---

[1] On June 5, 2017, the Court denied Plaintiff's original Motion to Remand for failure to conduct an adequate Local Rule 7-3 Conference.

least $5,118,969.[2] Specifically, they calculate that Plaintiff's claims place the following amounts at issue:

- At least $1,152,989 for failure to provide meal breaks;
- At least $1,152,989 for failure to provide rest breaks;
- At least $1,387,170 in unpaid wages and liquidated damages;
- At least $460,480 in waiting time penalties;
- At least $323,700 in wage statement penalties;
- At least $98,803 for failure to reimburse business expenses; and
- At least $542,838 in attorneys' fees.

Opposition at 5, 25. Because the Court concludes that Defendants' assumption of a 100% violation rate as to Plaintiff's meal break claim is not supported by the evidence, the Court concludes that remand of this action is warranted.

Defendants estimate that the amount in controversy for Plaintiff's meal break claim is $1,152,989. This calculation is based on the assumption that each class member incurred one meal break violation per shift during the class period. Defendants contend that this assumption is warranted in light of Plaintiff's allegation in her Complaint that pursuant to a "pattern and practice," Defendants "regularly failed to provide meal breaks due to the "uniform administration of corporate policy." Opposition at 6; Complaint at ¶¶ 29-30. Defendants failed to support their assumption of a 100% violation rate with any evidence other than the allegations in Plaintiff's Complaint.

In contrast, in support of her Motion, Plaintiff has presented evidence that she was unable to take an off-duty meal period approximately 70% of the time, or 3 to 4 times per work week "because of the way the company required store managers to schedule employees." Plaintiff's Amended Declaration at ¶¶ 5, 7. Extrapolating this 70% violation rate for the class, and relying on the data Defendants provided, Plaintiff calculates the amount in controversy for her meal break claim to be $807,092 ($1,152,989 x 0.7), $345,897 less than Defendants' estimate of $1,152,989, which would reduce the amount in controversy below $5,000,000.[3]

In light of the evidence submitted by Plaintiff, the Court concludes that Defendants have failed to demonstrate, by a preponderance of the evidence, that the amount in controversy exceeds $5,000,000. Although "a damages assessment may require a chain of reasoning that includes assumptions," those assumptions must be reasonable. *Ibarra*, 775 F.3d at 1199. Courts generally distinguish between complaints alleging "uniform" violations as compared to those alleging a "pattern and practice" of labor law violations. *See, e.g., Dobbs v. Wood Grp. PSN, Inc.*, 201 F. Supp. 3d 1184, 1188 (E.D. Cal. 2016); *Duberry v. J. Crew Group, Inc.*, 2015 WL 4575018, at *3 (C.D. Cal. July 28, 2015). "[W]here a plaintiff's complaint specifically alleges a 'uniform' practice, if a defendant in its amount-in-controversy calculus assumes a 100 percent violation rate

---

[2] In their Notice of Removal, Defendants calculated the amount in controversy to be in excess of $5,743,000. However, in their Opposition, Defendants have revised certain of their calculations and now estimate the amount in controversy to be in excess of $5,118,969.

[3] Plaintiff also contends that Defendants' minimum and overtime wage estimates should be reduced because they are derived from Defendants' 100% meal break violation rate.

*and* the plaintiff offers no competent evidence in rebuttal to a defendant's showing, courts have found a defendant's assumption to be reasonable." *Dobbs*, 201 F. Supp. 3d at 1188. In contrast, "where, rather than universal, a plaintiff alleges a 'pattern and practice' of labor violations, the Ninth Circuit has found that a defendant's assumption of a 100 percent violation rate would be unreasonable." *Id.* (citing *Ibarra*, 775 F.3d at 1198-99*).* Indeed, "'a pattern and practice' of doing something does not necessarily mean always doing something." *Ibarra*, 775 F.3d at 1198-99.

In this case, the Court concludes that the allegations of Plaintiff's Complaint are more similar to complaints alleging a "pattern and practice" of labor law violations than to those alleging "uniform" violations. Indeed, the Court finds Plaintiff's Complaint "alleges a 'pattern and practice' of labor law violations but does not allege that this 'pattern and practice' is universally followed every time the wage and hour violation could arise." *Ibarra*, 775 F.3d at 1199. Although Plaintiff refers to a "uniform administration of corporate policy," the Court concludes that the most reasonable reading of Plaintiff's allegations is not that Defendants failed to provide an off-duty meal period on each and every shift, but rather that Defendants had a uniform policy which resulted in class members' inability to take an off-duty meal period on a regular basis. Accordingly, the Court concludes that Defendants' assumption of a 100% violation rate is unreasonable.

More importantly, even if Defendants' assumption of a 100% violation rate could have been considered reasonable based solely on the allegations of Plaintiff's Complaint, Plaintiff has rebutted that assumption by presenting evidence of an alternative violation rate. In light of the fact that Plaintiff's violation rate is grounded in real evidence, whereas Defendants' violation rate is not, the Court has no choice but to conclude that Defendants have failed to meet their burden of demonstrating by a preponderance of the evidence that the amount in controversy exceeds $5,000,000. *See Durberry v. J. Crew Group, Inc.*, 2015 WL 45750178, at *3 (C.D. Cal. July 28, 2015) (emphasis added)("[C]ourts have generally found the amount in controversy satisfied where a defendant assumes a 100% violation rate based on allegations of a 'uniform' illegal practice (or other similar language) *and where the plaintiff offers no evidence rebutting this violation rate.*"); *Gillette v. Peerless Ins. Co.*, 2013 WL 3983872, at *3 (C.D. Cal. July 31, 2013) ("[W]here a complaint is ambiguous as to the amount in controversy, a plaintiff's post-removal declaration that the amount in controversy was less than $75,000 prior to removal may be sufficient to show lack of jurisdiction."); *Lewis v. Verizon Communications,* Inc., 627 F.3d 395, 401 (9th Cir. 2010) (emphasis added) (concluding that the amount in controversy was satisfied where the plaintiff was "seeking recovery from a pot that Defendant has shown could exceed $5 million *and* the Plaintiff has neither acknowledged nor sought to establish that the class recovery is potentially any less."); *Ibarra*, 775 F.3d at 1200 (remanding to the district court for both sides to submit proof related to the disputed amount in controversy, because the plaintiff contested the defendant's assumption regarding the violation rate "but did not assert an alternative violation rate grounded in real evidence, such as an affidavit by [plaintiff] asserting how often he was denied meal and rest breaks").

Accordingly, in light of the evidence presented by Plaintiff which reduces Defendant's estimated amount in controversy below $5,000,000, the Court concludes that remand is warranted.

## IV.     CONCLUSION

For the foregoing reasons, Plaintiff's Renewed Motion to Remand is **GRANTED.** This action is hereby remanded to Ventura County Superior Court.

IT IS SO ORDERED.